**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BILLY KEITH MIMS** | § | |
| **TDCJ No. 01840926,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-19-CV-788-LY** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges.

Before the Court are Petitioner's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF Nos. 1-2, 4), Respondent Davis's Response (ECF No. 9), and Petitioner's Reply (ECF No. 10). Having reviewed the record and pleadings submitted by both parties, the undersigned concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

1

# I. Background

In August 2012, Petitioner was charged by indictment with four counts of indecency with a child and five counts of aggravated sexual assault of a child. (ECF No. 7-17 at 4-7.) In February 2013, a jury convicted Petitioner of all nine charges, and sentenced him to thirty-three years imprisonment.[1] *State v. Mims*, No. 5708 (33rd Dist. Ct., San Saba Cnty., Tex. Feb. 1, 2013) (*Id.* at 47-64.) Below is a brief summary of the factual background for Petitioner's conviction.

> [T]he State alleged that Mims committed multiple acts of indecency with a child and aggravated sexual assault of a child against his two daughters—identified throughout the proceedings by the pseudonyms "Robbi" and "Angie." Evidence considered by the jury during trial included the testimony of Robbi, who was six years old at the time of trial; Angie, who was eight years old at the time of trial; Linda Harriss, a licensed professional counselor and registered nurse who was the designated outcry witness for each child; Amber Mims, the girls' mother; and several defense witnesses, including Karen Little, a nurse practitioner who had treated Robbi for unrelated issues prior to the child's outcry of abuse. Also admitted into evidence were "workbooks" completed by the girls during their counseling sessions with Harriss, in which they had made statements and drawn pictures relating to the allegations. Based on this and other evidence, the jury found Mims guilty of the charged offenses and assessed punishment as noted above.

*Mims v. State*, No. 13-13-00266-CR, 2015 WL 7166026 (Tex. App.—Austin Nov. 10, 2015, pet. ref'd).

On November 10, 2015, Petitioner's conviction was affirmed on direct appeal. *Id*. Petitioner thereafter filed a counseled Petition for Discretionary Review (PDR) (ECF No. 7-24), which the Texas Court of Criminal Appeals (TCCA) refused on June 8, 2016, *Mims v. State*, No. PD-1633-15 (Tex. Crim. App. June 8, 2016). Petitioner did not file a writ of certiorari in the United States Supreme Court. (ECF No. 1 at 3.)

---

[1] The jury sentenced Petitioner to the statutory minimum for each of his convictions: two years for counts 1-4; five years for counts 6 and 9, and twenty-five years for counts 5, 7-8. They were authorized to fine Petitioner up to $10,000 for each count but imposed no fine. The judge ordered sentences for counts 1-4 to run consecutively with the remaining counts to run concurrently. (ECF No. 7-18 at 47-64.)

On September 5, 2017, Petitioner filed a counseled state habeas corpus application, listing the following eleven grounds of relief:

A. Trial counsel provided ineffective assistance of counsel when

   1. counsel failed to file a written motion for continuance to ensure review of Linda Harriss's files, which she had neglected to bring as required by subpoena;

   2. counsel failed to investigate and show through an available witness that Petitioner had not violated a protective order;

   3. counsel failed to obtain a copy of the "notes" to which Amber Mims referred and reviewed during her testimony;

   4. counsel's inadequate cross-examination of Sheriff Brown brought out a history of animosity based on undescribed prior legal encounters;

   5. counsel's cross-examination of Sheriff Brown opened the door to irrelevant evidence regarding an unreported extraneous offense and Applicant's family's non-cooperation;

   6. counsel's inadequate cross-examination of Sheriff Brown allowed Brown to insinuate, and the jury to believe, that Applicant had avoided apprehension;

   7. counsel failed to object to testimony regarding whether the children demonstrated "some common characteristics that abused children might exhibit";

   8. counsel utilized a witness without proper investigation into her limitations as a witness;

   9. counsel's failure to investigate resulted in the exclusion of exculpatory evidence demonstrating the children's lack of reliability as witnesses; and

   10. counsel failed to object to improper voir dire.

B. Appellate counsel provided ineffective assistance of counsel when counsel failed to properly seek a hearing on motion for new trial.

(ECF Nos. 7-39, 7-40.) On September 18, 2017, the state habeas court ordered Petitioner's trial attorney to respond to Petitioner's allegations of ineffective assistance of counsel. (ECF No. 7-48 at 8.) On January 30, 2018, the state habeas court held an evidentiary hearing on Petitioner's habeas application; nine witnesses—including Petitioner—testified on Petitioner's behalf, and the State

3

called Petitioner's trial counsel and the lead prosecutor. (ECF No. 7-29 at 1-3.) On March 14, 2018, the state habeas court recommended denying all of Petitioner's grounds for relief (ECF No. 2 at 97-123), and on August 7, 2019, the TCCA denied Petitioner's state habeas corpus application without written order on the findings of the trial court after hearing (ECF No. 4 at 3). *Ex parte Mims*, No. WR-89,669-01.

On the same day, Petitioner filed through counsel the instant federal habeas petition. In it, counsel raises the following claims which he argues are based on claims from Petitioner's state habeas application:

1. Trial counsel failed to investigate material exculpatory evidence in violation of the Sixth Amendment;

2. Trial counsel was ineffective in failing to file a written motion for continuance to review counselor Harriss's late-provided records, which deprived Petitioner of meaningful review and a fundamentally fair trial;

3. Trial counsel was ineffective for failing to object to improper expert testimony regarding the truthfulness of the complaining witnesses;

4. Trial counsel was constitutionally ineffective in failing to object to, investigate, and mitigate irrelevant and prejudicial extraneous-offense testimony; and

5. Trial counsel was constitutionally ineffective in his attempted impeachment of former Sheriff Brown.

(ECF No. 1.) On November 13, 2019, Respondent filed an answer, to which Petitioner replied on November 27, 2019. (ECF Nos. 9-10.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## III. Analysis

### A.  Ineffective Assistance of Trial Counsel (IATC)

All five grounds Petitioner lists for federal habeas relief argue his trial counsel provided constitutionally deficient assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. AMEND. 6. Sixth Amendment claims concerning allegedly ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at

112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. Consequently, the question is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

### *1. Failure to Investigate*

In claim 1, Petitioner argues his trial counsel, John Timothy Cowart, was ineffective when he failed to investigate and obtain counselor Linda Harriss's therapy notes. Petitioner argues that the notes would have led Mr. Cowart to exculpatory evidence: specifically, evidence showing that, contrary to Ms. Harriss's testimony, it was impossible to secure his bedroom door with a chair under the knob because the door opened outward. The record shows the following.

On January 23, 2013—five days before trial began—Cowart filed a subpoena duces tecum requiring Ms. Harriss to produce, *inter alia*, her counseling records on the first day of trial. (ECF No. 7-17.) On the first morning of trial, Cowart learned that Ms. Harriss had rejected the January

23 subpoena, saying it did not have her name on it; the State said it would ask Ms. Harriss to bring the documents with her at her scheduled appearance the next day. (ECF No. 7-7 at 25, 29-30.)

The next day, Ms. Harriss did not bring the subpoenaed documents, reporting that her computer had crashed; the court ordered her to bring the records to the courthouse the following afternoon at 2:00 p.m. (ECF No. 7-8 at 171-81.)

On Wednesday, January 30, Ms. Harriss produced the subpoenaed documents and the judge reviewed them during an early afternoon recess. When court reconvened around 12:30 p.m., the judge noted that the some of the documents were new to both parties; the parties agreed to recess until Thursday morning to review them. (ECF No. 7-9 at 114-17.) On Thursday morning, Cowart made an oral motion for continuance, arguing he needed more time to review the forty-four pages of counseling notes Ms. Harriss had produced. (ECF No. 7-10 at 9-10.) The prosecutor opposed the motion, arguing the documents produced were progress notes, and as such, not complicated and easily reviewable. (*Id.* at 10-12.) The court denied the motion, reasoning that defense counsel had not attempted to subpoena the documents until the Wednesday before trial, despite having had several weeks notice of Ms. Harriss's testimony, and that both parties had had ample time for review. (*Id.* at 12-13.)

After the court's decision, Ms. Harriss testified. In her testimony, she said that Robbi, the younger complainant, made her first outcry by drawing a picture of a lock; when Ms. Harris asked her about it, Robbi said it was "[t]he lock on daddy's bedroom door. Daddy locked the door." (*Id.* at 39.) Ms. Harriss also testified that Angie, the older complainant, said Petitioner had slammed the bedroom door in his house, locked it, and touched her vagina. (*Id.* at 63.) On cross-examination, Cowart asked Ms. Harriss about the locks, and she replied "I recall Angie telling me in one of the

houses they lived in . . . there wasn't a lock on the door, so [Petitioner] put a chair by the door handle instead to keep the door from being opened." (*Id.* at 125.)

Later that afternoon, Petitioner testified in his defense. On cross-examination, the prosecutor noted that there were no locks on the doorknobs in the house where Petitioner had lived with his ex-wife during the time of the alleged abuse (the "green house").

> Prosecutor: So if you were going to keep somebody from coming in to that door, you'd have to put a chair under the doorknob to effectively [] lock it from the inside, wouldn't you?
>
> Petitioner: But I don't ever lock my doors. There's no reason to lock it.
>
> Prosecutor: Well, back to the question. But if you were going to lock it, you would pretty much have to use a chair to secure that door from the inside, wouldn't you?
>
> Petitioner: If you had a tall enough chair.
>
> Prosecutor: And that was consistent with what Ms. Harriss said earlier in her testimony, wasn't it?
>
> Petitioner: I guess so, yeah.

(ECF No. 7-10 at 302.) After Petitioner testified, the defense closed. The State then called Ms. Harriss back in rebuttal. Ms. Harriss testified that Angie had told her Petitioner had put a chair under the door handle to secure the bedroom door before sexually assaulting her. The State then rested and the jury was dismissed until the following morning for deliberations. (*Id.* at 322-25.)

After the jury left, Cowart moved to reopen evidence in the morning, so the defense could show that the doors Ms. Harris was referring to opened outward, thus making it impossible to secure them by placing a chair against the doorknob. The court denied the motion, concluding that Ms. Harriss seemed like she was "just kind of reiterating testimony she had already given previously." (*Id.* at 327-28.)

Petitioner now argues Cowart provided ineffective assistance of counsel when he failed to subpoena Ms. Harriss's progress notes earlier. Petitioner argues that, had Cowart run a competent investigation, he would have acquired these notes long before trial and could have used them to impeach Ms. Harriss's testimony and, by extension, the complainants' outcries. (ECF No. 2 at 25-36.)

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Furthermore, a petitioner cannot "simply allege but must affirmatively prove prejudice" under *Strickland* when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). A petitioner alleging that an investigation is deficient must show what the investigation would have uncovered and how the petitioner's defense would have benefited from this information. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Petitioner must show that counsel's allegedly deficient performance prejudiced Petitioner's defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Further, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. *See also Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (finding that an IATC

claim may be rejected for want of either deficient performance or prejudice, and thus the absence

of either prong of the *Strickland* analysis is dispositive) (citation omitted).

The state habeas court held an evidentiary hearing on Petitioner's claims. In the hearing,

Cowart's paralegal during the trial, Brenda Edwards, testified that Cowart "didn't prepare for

trial." Ms. Edwards also testified that she, not Cowart, had analyzed Ms. Harriss's progress notes,

which she then summarized for Cowart, and that Cowart had not reviewed the notes himself. (ECF

No. 7-29 at 34-37.) However, Cowart testified that he did personally review the progress notes.

(*Id*. at 130.) The state habeas court made the following findings:

> 4. The State of Texas timely provided to Tim Cowart as discovery all of the records
> which Linda Harriss provided to the State of Texas up to and including January 28,
> 2013.

> 5. On January 23, 2013 Tim Cowart filed with the San Saba County District Clerk
> an application for issuance of a subpoena duces tecum to be served upon Linda
> Harriss.

> 6. Linda Harriss refused to accept service of the subpoena duces tecum.

> 7. On January 28, 2013 the trial court instructed the prosecutor to have Linda
> Harriss bring the requested records with her when Linda Harriss was to appear on
> January 29, 2013 as directed in the subpoena issued on behalf of the State of Texas.

> 8. On January 29, 2013 Linda Harriss gave testimony before the trial court that her
> computer containing her session notes had "crashed". Linda Harriss testified that
> she would locate and bring with her any records she [had] which were maintained
> in paper form outside of the computer that had "crashed". After hearing testimony
> regarding what records Linda Harriss would have that would be responsive to the
> subpoena duces tecum requested by Tim Cowart, the trial court ordered Linda
> Harriss to produce the responsive records at 2:00 p.m. on January 30, 2013. The
> trial court ordered Linda Harriss not to show the responsive records to either the
> prosecutor or to Tim Cowart until such time as the trial court had first reviewed the
> records in question.

> 9. On January 30, 2013 Linda Harriss produced records to the trial court which she
> represented that were responsive to the order of the trial court. Both the prosecutor
> and Tim Cowart agreed that these were records that had just been produced by
> Linda Harriss which had not previously been seen by the prosecutor nor by Tim

Cowart. By agreement of the parties and approval of the trial court the cause was recessed at 12:58 p.m. until 8:30 a.m. on January 31, 2013 to give the parties an opportunity to review these records.

10. On January 31, 2013 Tim Cowart announced to the trial court that the records produced by Linda Harriss on January 30, 2013 consisted of 44 pages of counseling notes which had not previously been seen by him or by the prosecutor. Mr. Cowart further announced that he needed additional time to have an expert to evaluate these records and to further evaluate them himself and to investigate the contents. For this reason Tim Cowart made an oral motion for continuance on the fourth day of trial. The prosecutor responded that the State did not intend to introduce any new evidence that was contained in these 44 pages of records. The trial court denied the oral motion for continuance.

15. As shown in Exhibit 15-A Tim Cowart conducted a reasonably thorough and aggressive cross-examination of Linda Harriss at trial.

72. After both sides had rested and closed, Tim Cowart requested the trial court reopen the case for additional evidence so that photographs could be entered as evidence to show the direction in which the interior doors of the green house open.

73. The request to reopen evidence made by Tim Cowart was denied by the trial court.

74. The act of Tim Cowart in unsuccessfully seeking to reopen the evidence in order to offer one or more photographs as the result of a comment from the Applicant, on its own and based on the evidence before this Court, did not affect the verdict of the jury.

(ECF No. 7-55 at 1-2, 12.)

In recommending denying this claim, the state habeas court concluded that, despite the delay in receiving the progress notes, Cowart was able to conduct a thorough cross-examination of Ms. Harriss. Petitioner argues the state habeas court's application of *Strickland* is unreasonable because Cowart could have used the progress notes to impeach Ms. Harriss's testimony. However, this Court concludes Petitioner has not shown that this impeachment would have had a substantial likelihood of changing the outcome of the trial. Although there was apparently photographic evidence that the "green house" doors opened outward, Petitioner testified at trial that a "tall

12

enough" chair could have secured his bedroom door. Thus, the evidence would have not only impeached Ms. Harriss's credibility but Petitioner's as well, and as a result, has not shown that his defense was prejudiced by Cowart's alleged failure to investigate. *See Day v. Quarterman,* 566 F.3d 527, 536 (5th Cir. 2009) (if the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance) (citations and quotations omitted). Accordingly, the state habeas court's application of *Strickland* was not unreasonable, and this claim should be denied.

### 2. Failure to File Written Motion for Continuance

In claim 2, which is based on the same facts as claim 1, Petitioner argues trial counsel provided ineffective assistance when he failed to file a written and sworn motion for continuance on the fourth day of trial. Specifically, Petitioner argues because Cowart failed to file a written, sworn motion for continuance along with his oral motion on the fourth day of trial, he failed to preserve any error by the trial court for appellate review, which Petitioner argues constitutes ineffective assistance of counsel.

At the state habeas hearing, the prosecutor asked Cowart why he had not filed a written motion for continuance:

> Cowart: I kind of spelled it out in my affidavit. I felt like it would not be well received. Not that that's not a – that's something when you work in the defense side especially, you file things or you make arguments or motions or objections that may be not well received, but I also felt like I needed to be in the right frame of mind to finish out this trial.

> Prosecutor: Let me just ask you about that, about the frame of mind tying in to making waves, if you will, at the time. Did you think there was any chance that you were going to get a continuance in that trial?

> Cowart: In my mind I thought the chances of the trial court granting a continuance were between slim and none.

(ECF No. 7-29 at 131.) However, on cross-examination, Cowart admitted that, at the time of trial,

he was not aware he had to file a written motion for continuance in order to preserve error:

> Q: Were you aware that by not filing the written motion for continuance you were not preserving the question of whether the trial judge should have granted a continuance?
>
> Cowart: At that time I was not aware of that particular fact.
>
> Q: Now as I understand what you're saying here is that you sensed the trial court was going to deny it and then you said "This is tempered by my expectation to remain in the right frame of mind." Would you please explain that?
>
> Cowart: Sure. In my mind I felt like it was going to be denied and so I needed to be prepared for the Court denying it and to be ready to examine and call witnesses.
>
> Q: Okay. But — okay, am I getting it right that primarily you didn't file a written motion because you didn't know you had to?
>
> Cowart: I did not know that that was absolutely necessary to preserve potential error.

(*Id.* at 152-53.) The state habeas court made the following findings:

> 10. On January 31, 2013 Tim Cowart announced to the trial court that the records produced by Linda Harriss on January 30, 2013 consisted of 44 pages of counseling notes which had not previously been seen by him or by the prosecutor. Mr. Cowart further announced that he needed additional time to have an expert to evaluate these records and to further evaluate them himself and to investigate the contents. For this reason Tim Cowart made an oral motion for continuance on the fourth day of trial. The prosecutor responded that the State did not intend to introduce any new evidence that was contained in these 44 pages of records. The trial court denied the oral motion for continuance.
>
> 11. Tim Cowart did not file a written motion for continuance related to the 44 pages of records at issue.
>
> 12. Neither the State of Texas nor the Applicant has produced for this Court to review the 44 pages of records at issue nor has either party provided this Court with any summary or detail of the contents of the 44 pages of records at issue.
>
> 13. The contents and level of importance of the 44 pages of records are unknown to this Court.

14

14. There is no evidence, other than the speculation and argument of counsel, to show that there was any information within the 44 pages of records which could have lead to admissible evidence favorable to the defense if a continuance had been granted.

15. As shown in Exhibit 15-A Tim Cowart conducted a reasonably thorough and aggressive cross-examination of Linda Harriss at trial.

16. The Applicant has failed to prove to this Court by a preponderance of the evidence that the trial court would have or should have granted a continuance if Tim Cowart's motion had been presented in writing.

17. The failure of Tim Cowart to submit a written motion for continuance, on its own and in light of the evidence presented to this Court, would have had no effect on the verdict of the jury in this cause.

(ECF No. 7-55 at 2-3.) In his federal petition, Petitioner argues that, but for counsel's deficient performance in failing to file a written motion, "it is reasonably likely that the sheer lack of reliable evidence or testimony would have resulted in a different outcome at trial had counsel been able to timely discover and present the blatant untruths in Harriss's notes, as there was no other evidence to support sexual abuse beyond Harriss's unreliable therapy." (ECF No. 2 at 42.)

To prevail on his IATC claim, Petitioner must show that he was prejudiced at trial. However, there was nothing before the state habeas court and nothing before this Court suggesting the trial court was substantially more likely to grant the motion for continuance had Cowart put it in writing. Petitioner has therefore failed to show a reasonable likelihood the trial would have had a different outcome had Cowart filed a sworn and written motion for continuance. *See Day*, 566 F.3d at 536 (if the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance). Accordingly, the habeas court was not unreasonable in its application of *Strickland* and this claim should be denied.

*3. Failure to Object to Expert Testimony*

In ground 3, Petitioner argues his counsel was ineffective when he failed to object to part of Ms. Harriss's testimony, which Petitioner alleges violated Texas Rule of Evidence 702.[2] Specifically, Petitioner points to the following exchange:

> Cowart: Let me ask you this: Is it your position that you should only – your date to provide records to the prosecution or anybody is limited after you initially provide records?
>
> Harriss: No, I don't – well, you know what? I know that my first priority is to protect my children that I see. If that means keeping information that's going to keep a defense attorney from working a case against them, then I'm going to fight to protect those records because I don't want to make anything where it's going to be easier for a defense attorney to try to come up with stuff to say that, you know, this didn't happen. I know what happened.

(ECF No. 7-10 at 138-39.) Petitioner argues that this last statement, "I know what happened," was inadmissible under Rule 702 as it decided a fact for the jury, i.e. that the complainants' outcries were true. Respondent argues both that this ground is procedurally barred because it was not fairly presented to the state habeas court and that, in the alternative, it is without merit.

In his state habeas application, Petitioner argued that Cowart provided ineffective assistance when he failed to object to Harriss's testimony regarding whether the complainants demonstrated "some common characteristics that abused children might exhibit." (ECF No. 7-45 at 3-10.) State habeas counsel argued that this testimony was outside the boundaries of Rule 702 and that, by failing to object to it, Cowart allowed Ms. Harriss to testify that the abuse had happened and that the complainants were telling the truth. (*Id.*)

Upon review, the state habeas court made the following findings:

---

[2] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702.

60. During direct examination of Linda Harriss the prosecutor asked if the witness had become familiar with some common characteristics of abuse that children might exhibit.

61. The testimony of Linda Harriss regarding common characteristics of abuse that children might exhibit was that of an expert.

62. Tim Cowart did not object to the testimony of Linda Harriss regarding common characteristics of abuse that children might exhibit.

63. After describing common characteristics of abuse that children might exhibit, Linda Harriss testified that Applicant's children did exhibit these characteristics, however, this witness did not testify that it was her opinion that the children had been abused.

64. As shown in Exhibit 15-A during cross-examination conducted by Tim Cowart of Linda Harriss, Linda Harriss agreed that each of the characteristics that Linda Harris had previously described as common characteristics of abuse could also be characteristics of other traumatic events or personality traits.

65. During the cross-examination conducted by Tim Cowart of Linda Harriss, Linda Harris acknowledged that the evidence of many of the changes in behavior in the children came to Linda Harris from Amber Mims.

66. The failure of Tim Cowart to object to testimony from Linda Harriss regarding whether the children demonstrated "some common characteristics that abused children might exhibit", on its own and based on the evidence before this Court, did not have an effect on the verdict of the jury.

(ECF No. 7-55 at 10-11.)

The legal argument presented to the state habeas court and to this Court are similar: state habeas counsel argued that Cowart should have objected to the "common characteristics" testimony because it decided a fact issue left to the province of the jury; federal habeas counsel makes a similar argument but refers to an earlier part of Ms. Harriss's testimony.

Under § 2254, a federal court may not grant habeas relief unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The Supreme Court has interpreted exhaustion to mean that the grounds raised in a federal habeas

petition must have been "fairly presented" to the state courts prior to presentation in federal courts, and that in order for a claim to be exhausted, the state courts must have been presented with the same facts and legal theory upon which the petitioner bases his federal claims. *Picard v. Conner*, 404 U.S. 270, 275 (1971). Here, the legal arguments are similar and, while the facts are different, they come from the same testimony. It is a close call whether, using a similar legal argument but basing the error on different facts, Petitioner can now argue he "fairly presented" the current claim before the state habeas court. However, under § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Here, because the Court concludes Petitioner's claim is meritless, it need not decide whether or not it was fairly presented before the state habeas court.

Under Texas law, expert witnesses are allowed to testify that a complainant exhibited symptoms or behaviors consistent with sexual abuse but are prohibited from testifying that a witness is truthful or telling the truth. *Yount v. State*, 872 S.W.2d 706, 708-09 (Tex. Crim. App. 1993). A direct opinion as to the truthfulness of a witness "crosses the line" under Rule 702 since "it decides an issue for the jury" whose role is to draw conclusions about the credibility of a witness. *Id.* A lay witness, however, can offer opinion testimony if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Tex. R. Evid. 701. Further, under Texas Rule of Evidence 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The trial record shows the court had granted Cowart's pretrial motion in limine which included the following provision: "Any expert witness testimony until such time that the Defendant has had an opportunity to voir dire the witness out of the presence of the jury." (ECF No. 7-17 at

115.) The record also shows Cowart was aware of this limitation when he objected to the "common characteristics" portion of Ms. Harriss's testimony:

> Cowart: Your Honor, I think this is a violation of the motion in limine. Approach?
>
> The Court: Please. . . .
>
> Cowart: Before eliciting any type of testimony from an expert, that we have a hearing on the scientific reliability, and she's already asking her predicate questions for that. I haven't had a chance to voir dire her on the scientific reliability.
>
> The Court: He's saying it's a violation of the motion in limine where we would approach before you got into scientific stuff to test for reliability.
>
> Cowart: Or an expert.
>
> Prosecutor 1: I apologize, Your Honor. I'm happy to give him that opportunity now. I didn't intentionally violate any motions in limine. I'm just trying to get finished.
>
> The Court: Do you need this question?
>
> Prosecutor 1: I would like to have it, yes.
>
> Prosecutor 2: The reliability? She's established her credentials. This isn't expert testimony like *Frye* or *Daubert*. This is what she knows from her experience. . . .
>
> Cowart: What she's going to do -- and she alluded to this earlier in testimony -- say, oh, yeah, it did happen. It did happen. And I think what we need to do is find out the basis for that conclusory statement and whether it's based on --
>
> Prosecutor 1: Your Honor, I will not ask her a conclusory statement that's at the province of the jury. It's in the province of the jury as to whether or not it happened or what they believe, and I will not ask her that.
>
> The Court: So if you keep the questioning like that, then we'll proceed.
>
> Cowart: With that caution, that works, Your Honor. Yes, sir.

(ECF No. 7-10 at 147-48.)

This exchange occurred *after* Ms. Harriss stated "I know what happened." In the state habeas court's findings of fact, the court concluded Ms. Harriss was testifying as an expert during

19

her "common characteristics" testimony but made no findings as to the rest of her testimony. That finding, along with the parties' exchange above, leads this Court to conclude that Ms. Harriss was testifying as a lay witness when she said "I know what happened", and thus her testimony was not subject to the Rule 702 restrictions. Accordingly, her statement was admissible and Cowart was not ineffective for failing to make a meritless objection. *See Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) (failure to lodge futile objections does not qualify as ineffective assistance) (citation and quotation omitted); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection); *Ex Parte Nailor*, 149 S.W.3d 125,134 (Tex. Crim. App. 2004) (lay witness may offer opinion on an ultimate issue, appellant's contention trial counsel fell below an objective standard of reasonable competence for failing to object to such testimony is without merit). This claim should be denied.

### 4. Failure to Object to Testimony

In Petitioner's fourth ground, he argues that Cowart provided ineffective assistance when he mismanaged the cross-examination of Petitioner's ex-wife, Amber Mims, resulting in the introduction of false extraneous-offense testimony. Petitioner points to a portion of Cowart's cross-examination of Ms. Mims where he asks her if she was afraid of Petitioner, and she says yes. Cowart then attempted to impeach her statement by asking her if she had driven by Petitioner's house just over the past weekend, to which she also responded yes. (ECF No. 7-8 at 31-38.) The State then asked to redirect Ms. Mims regarding her reasons for driving to Petitioner's house. On redirect, Ms. Mims testified that she had a protective order against Petitioner stating he could not be within 1,000 feet of her; that she saw Petitioner's truck parked at his sister's house—which she thought was within 1,000 feet of her house—for three to four nights; and that she felt very uncomfortable and thought "Is he going to come to my house? Is he going to break into my house

20

and kill myself and them, my kids?" Ms. Mims testified she drove by Petitioner's house to see if

his girlfriend's car was there, assuming Petitioner would be there if his girlfriend was. (*Id*. at 43-

45.)

> In his affidavit, Cowart described his strategy behind questioning Ms. Mims:
>
> As to Amber Mims' testimony about the protective order possibly being violated on the weekend prior to trial, she admitted that, despite her "fear of Billy," she "went ahead and drove past his house in Hall, Texas, or Hall Valley, just this past Saturday afternoon" I also cross-examined her about being "afraid of Billy," yet she "made the decision to go by and check to see if he was at his house;" "and that was because you were afraid that Billy might break into your house or kill you?" "You drove within 1,000 feet of his house, didn't you?"
>
> My strategy was to show that no protective order had been violated; no witness testified that they saw Billy Mims anywhere near Amber Mims. Consequently, I wanted to portray Amber Mims' behavior as being obviously inconsistent with someone fearful of Billy Mims. Furthermore, Amber Mims' behavior made even less sense in view of her claim of being afraid that Billy Mims could possibly kill her.

(ECF No. 7-49 at 1.) At the hearing, Cowart testified

> In my mind we were able to establish if she's so afraid of him like she said under direct examination, why the heck is she going and seeking him out. It's not like – you know Hall Valley ain't Grand Central Station in New York City where there's a lot of people. You know, why is she going to this rural area and seeking him out if she's so afraid of him and afraid he's going to hurt her or stalking her or something? That just didn't -- it didn't make sense then and it doesn't make sense now.

(ECF No. 7-29 at 135). The state habeas court made the following findings:

> 18. On January 29, 2013 Amber Mims gave testimony on the State's direct examination that at an unspecified time a protective order was entered prohibiting Applicant from being within 1,000 feet of Amber Mims.
>
> 20. Amber Mims gave further testimony that on an unspecified date she observed the Applicant's truck parked at the Tharp residence, a location within 1,000 feet of Amber Mims, for three to four days and nights.

21. Amber Mims gave further testimony that the presence of the truck caused her to fear that the Applicant was going to break into her house and kill her and the children.

22. Amber Mims gave no testimony that she observed the Applicant himself at the Tharp residence at any time during the pendency of the protective order.

23. Amber Mims gave no testimony that the Applicant ever attempted to break into her house or attempted to harm her or the children during the pendency of the protective order.

24. On cross-examination by Tim Cowart, Amber Mims acknowledged that because she was afraid that the Applicant might break into her house or kill her, she made the decision to go to the Applicant's house to see if the Applicant was there. 29. As shown in Exhibit No. 19 in direct examination by Tim Cowart of Shelly Tharp, Ms. Tharp testified that Amber Mims' reputation for telling the truth was bad.

30. As shown in Exhibit No. 17 in direct examination by Tim Cowart of Shana Grant, Ms. Grant testified that Amber Mims' reputation for telling the truth was bad.

31. As shown in Exhibit No. 22 in direct examination by Tim Cowart of Timothy Grant, Mr. Grant testified that Amber Mims' reputation for telling the truth was not good.

(ECF No. 7-55 at 3-5.)

The Fifth Circuit has held that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). "[C]ounsel has wide latitude in deciding how best to represent a client," *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003), and counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable," *Strickland*, 466 U.S. at 690. Further, because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). As a result, as long as counsel's trial strategy was reasonable,

22

"[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort

of hindsight that *Strickland* warns against." *See Castillo v. Stephens*, 640 Fed. Appx. 283, 292 (5th

Cir. Feb. 8, 2016) (citing *Strickland*, 466 U.S. at 689).

The record supports the state habeas court's determination that Cowart was not ineffective

in his cross-examination of Ms. Mims. Although Petitioner argues that Ms. Mims's testimony was

"very prejudicial and eviscerated an otherwise effective cross-examination" (ECF No. 2 at 55),

there was no testimony that Petitioner violated the protective order and several witnesses testified

that Ms. Mims did not have a good character for truthfulness. Accordingly, the state habeas court's

application of *Strickland* was not unreasonable and this claim should be denied.

### 5. Failure to Effectively Impeach Witness

In his last claim, Petitioner argues Cowart provided ineffective assistance of counsel in his

cross-examination of Sheriff Brown, when "instead of merely showing that Brown had a pre-

existing bias against [Petitioner], the unfocused cross-examination permitted Brown to also discuss

extraneous acts, to state that [Petitioner]'s family was uncooperative in past incidents with law

enforcement, and to insinuate that [Petitioner] did not want to self-surrender since [] Brown placed

wanted posters up in San Saba county." (ECF No. 2 at 67.)

In his state court affidavit, Cowart stated:

I was aware that former Sheriff Allen Brown had been defeated by a considerable
margin in his re-election bid just a few months prior to the trial of this case. As
someone with friends, clients and acquaintances who live in San Saba County, I
also knew that Allen Brown was a polarizing figure; some county residents loved
him, while a significant majority of other citizens had a negative view of Allen
Brown. I knew that he was viewed by many people in the county as being overly
zealous and cocky, and I believed that was a significant reason why he had lost the
election. In my mind, it stood to reason that a good number of the jurors, perhaps
the majority, had a negative view of the former Sheriff. In this context, my strategy
was to show that former Sheriff Brown had a history of harassing Billy Mims.

(ECF No. 7-49 at 3.) The state habeas court made the following findings:

> 45. The manner in which Tim Cowart cross-examined former Sheriff Brown which included prior encounters between former Sheriff Brown and the Applicant, on its own and based on the evidence before this Court, did not have an effect on the verdict of the jury.
>
> 49. Based on Exhibit 6 and Exhibit 7 Tim Cowart conducted a detailed and aggressive cross-examination of former Sheriff Brown.
>
> 50. The trial strategy demonstrated by Tim Cowart to show the extent of animosity that former Sheriff Brown held against the Applicant [] and the inadequate and unprofessional investigation conducted by former Sheriff Brown was within reason.
> 51. The manner in which Tim Cowart cross-examined former Sheriff Brown which included the statement that [Brown] considers the Applicant's family to be hard to deal with on its own and based on the evidence before this Court, did not have an effect on the verdict of the jury.
>
> 58. The trial strategy demonstrated by Tim Cowart to show the extent of animosity that former Sheriff Brown held against Applicant [] and that former Sheriff Brown utilized the wanted posters as a "smear tactic" was within reason.
>
> 59. The manner in which Tim Cowart cross-examined former Sheriff Brown which included former Sheriff Brown insinuating the Applicant had avoided apprehension, on its own and based on the evidence before this Court, did not have an effect on the verdict of the jury.

(ECF No. 7-55 at 6-10.)

Petitioner cites no case law supporting his argument that Cowart's cross-examination of Sheriff Brown was constitutionally deficient and that the state habeas court's findings are not entitled to deference. The Court concludes that the record supports the state habeas court's conclusion that Cowart's cross-examination of Brown was within the "bounds of prevailing objective professional standards." *Strickland,* 466 U.S. at 687-89. Based on this Court's "doubly deferential" review under the AEDPA, the Court concludes the state habeas court's findings were not an unreasonable application of *Strickland*, and recommends this claim be denied.

## IV. Recommendation

The undersigned recommends the District Court **DENY** Petitioner's Petition for Writ of Habeas Corpus.

## V. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the undersigned recommends that the Court should not issue a certificate of appealability.

25

## VI. Objections

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

SIGNED this the 14th day of August, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE